## Bristol Township Education Association v. Bristol Township Board of School Directors

*John F. X. Fenerty,* for plaintiffs.
*Edwin N. Popkin,* for defendants.

RUFE, J., April 28, 1972.—Plaintiff, Bristol Township Education Association (hereinafter referred to as teachers) has entered into a collective bargaining agreement (contract) with defendant, Bristol Township Board of School Directors (hereinafter referred to as board), under the authority of the Public Employe Relations Act of July 23, 1970, P. L. 563, 43 P. S. §1101, et seq.

The board has now extended the pre-existing recess supervision duties of the teachers, which the teachers allege is a contract violation. The contract sets up a grievance procedure terminating in binding arbitration, utilizing the services of the American Arbitration Association. However, the teachers argue that the delays in the grievance procedure will nullify their rights because arbitration cannot be completed before the end of the school year, and they will have been forced to obey the allegedly violating board order until the arbitration decision, by which time the question will be moot because the school year will have ended. The board counters by arguing that the arbitration decision, if favorable to the teachers, can require the board to compensate the teachers for the extra duty served if that extra duty does, in fact, violate the contract as alleged.

The teachers then raise the further argument that such compensation cannot possibly remedy the time lost during the teaching day, that deprives the teachers of the critical time necessary to devote to individual students' specific problems and needs as dictated under the multi-level system of education in practice in the district. The consequence of this alleged fact is a less effective professional teaching result, particularly in the complex multi-level system of education which stresses close teacher-student relationships. To this argument, the board replies that the contract mandates

"a minimum of 200 minutes weekly" teacher preparation time, which is allegedly to be used to develop the close teacher-student contact inherent in the multilevel system.

As a result of this controversy the teachers have filed a complaint seeking an order enjoining the execution of the order allegedly violating the contract until such time as arbitration proceedings determine whether or not the order is, in fact, a contract violation. This case is now before the court under rule 266 on the board's preliminary objections to the teachers' complaint in equity.

The board seeks dismissal of the teachers' complaint on essentially three grounds: (1) That the teachers have failed to exhaust the remedies available to them under the grievance procedure set forth in the contract and in the Public Employe Relations Act, supra; (2) that the court of common pleas cannot assume jurisdiction, even in equity, under the express provisions of the Public Employe Relations Act; and (3) that the teachers have an adequate remedy at law. We address ourselves to each of these objections separately.

1. We are not concerned in this proceeding with the merits underlying the present controversy. Both parties agree that the alleged contract violation question concerning the recess supervision duties imposed on the teachers by the board is a contract interpretation that must be determined by arbitration. In fact, by stipulation, the parties have agreed to immediately submit this question to arbitration, by-passing the intermediary grievance procedure steps leading thereto. The question before the court concerns the delay inherent in the arbitration proceedings, and whether or not that delay warrants equitable relief in the form of an injunction to prevent irreparable harm until

such time as arbitration proceedings determine whether or not the order violates the contract. Consequently, it is the "exhausting of the remedies" itself that creates the alleged irremediable harm, and we, therefore, disregard this contention of the board.

2. The board then argues that section 903 of the Public Employe Relations Act requires mandatory arbitration of disputes or grievances arising out of provisions of a collective bargaining agreement, and, therefore, the court of common pleas has no jurisdiction in any such dispute whatsoever. We disagree with this contention. The court of common pleas can take equitable jurisdiction in an instance "where the requirement of exhaustion of remedies would subject a member to an injury that is in a practical sense irreparable": Falsetti v. Local Union No. 2026, U.M.W.A., 400 Pa. 145, 161 (1960). The example cited in the Falsetti case in support of the doctrine quoted was a union member expelled from his union being prevented from working in a union shop while exhausting his remedies. Certainly, if the teachers can show irreparable injury while awaiting the mandatory arbitration determination of the dispute or grievance arising out of the contract, equitable jurisdiction can and will attach to prevent that irreparable injury. Arbitration continues as the sole mandatory method of interpretation of the collective bargaining agreement, but equity is still available to redress and prevent irreparable injury that might be inflicted during the pendency of the arbitration proceedings or while the remedies are being exhausted. Accordingly, we conclude that equitable jurisdiction can attach in a proper factual situation and therefore overrule this argument by the board.

3. Finally, have the teachers alleged a factual

situation whereby they will suffer irreparable injury without an adequate remedy at law?

Assuming for the purposes of the preliminary objections that the teachers can show the increased recess supervision duties do deprive the teachers of much valuable time necessary to properly execute the multi-level system of education in the district to the extreme "derogation of the quality of programs within the school district," would this showing cause the irremediable harm necessary to warrant equitable jurisdiction?* We think not.

The question of the quality of the programs in a school district has always been a matter of policy determination for the board. Whether or not the money should be spent to purchase new and better laboratory equipment; or to institute a new modern language course; or to hire more experienced and better qualified teachers; or to enlarge the school library; and an infinite number of similar examples of improving the quality of the education provided in a school district have always been policy decisions reserved to the board. Similarly, whether or not the board should hire nonprofessional personnel to supervise recess and free the teachers to better fulfill their professional teaching duties falls squarely within the board's policy making duties. If the board chooses not to spend the extra money to hire the non-profes-

---

*The complaint also alleges the violating order is "in derogation of the welfare and working conditions of the elementary teachers," but no facts were alleged or argued to substantiate any such derogation. The crux of the question is the inability to properly perform the professional teaching duties because of the decreased time available to the teachers as a result of the order.

sional personnel to supervise recess periods, that policy decision is equivalent to a similar policy decision not to purchase new laboratory equipment, no matter how essential the science department may deem the equipment to be. Here, the teachers may believe, as the science teachers in the example, that the quality of the educational program is completely emasculated by the board's policy. Nevertheless, such policy making is exclusively the board's prerogative.

Nor does the contract itself aid the teachers on this point. The contract requires that the teachers must have a minimum of 200 minutes a week preparation time within the scope of the student day: Contract, article VIII, sec. E, par. 6. Both parties have stipulated that the allegedly violating directive has not affected this contract requirement. This provision appears to establish the board's policy as to the "quality" of the multi-level system of education insofar as that "quality" is relevant here. The teachers may feel that such a minimum is unrealistic or establishes the quality level too low. Nevertheless, if that is the case, then the teachers should convince the board that such a minimum does, in fact, derogate the quality of the programs and with its arguments, induce the board to change the policy when the contract is renegotiated, not in equity in the court of common pleas.

## ORDER

And now, to wit, April 28, 1972, defendants' preliminary objections are sustained and plaintiffs' complaint is hereby dismissed.